We're just rushing up to the podium. This happened yesterday, too. You will not deter me from pointing out that we do have time limits. We have not read the full record, although we're well acquainted with the briefs and record excerpts and whatever else I need to say. The first case on the docket is No. 2360230. Pardon the allergies. National Center for Public Policy Research v. SEC. Mr. McOtter. Thank you, Judge, and may it please the Court. This case is about the SEC's inconsistent treatment of shareholder proposals addressing diversity. The SEC consistently gives the green light to exclude petitioner's proposal about intellectual diversity, concluding that it doesn't raise an issue of significant social policy, while refusing to do the same for verbatim proposals about other forms of diversity. That inconsistency is arbitrary and capricious, and it violates the First Amendment. A straightforward application of this Court's decision last year in Clark v. CFTC resolves every aspect of this case, and you don't have to take my word for it. The CFTC's own brief in Clark at page 38 said that the no-action letters in that case were, quote, virtually indistinguishable from those issued by the SEC. And Clark held that those no-action letters, that green light, regulated action, are final agency action. Not just any action, though. They are licenses, which makes them orders under the APA. The language in the statutes and the regulations for the CFTC and the SEC are different. Is that correct? One speaks to a final action, and the other one speaks to a final order. That's right, Judge. In Clark, the Court was here, the Exchange Act requires a final order. What was the final order that you're appealing? So the final order here was the staff division no-action letter. As Clark explained, that kind of letter, which again, virtually indistinguishable between the two cases, is a form of permission and is therefore a license. And that matters because the APA, section 551, says that a license is necessarily an order. So that's how we get, in our view, the easiest way to get to an order. Remember, the APA largely divides the universe of agency action into orders and into rules. The APA says a license should be treated as an order. So once Clark held that these no-action letters are licenses, under the APA's definitions, that means it's an order as well. Clark also held that a dispute over these no-action letters is not moot, so long as the agency continues to spar over the issue. The SEC certainly does so here. They haven't conceded error. In fact, they seem to double down on their interpretation as espoused in the no-action letter. And third, Clark held the agencies must give a reasoned explanation in these no-action letters, which the SEC admits it did not do here. Well, Chris, this occurred before Clark came out. That's true, Your Honor, yes. Although I don't think the SEC has argued that for that reason, Clark wouldn't apply. In Clark, the agency's actions had occurred before the court's opinion came out as well, and the court still granted relief in that case. So under our view, Clark confirms jurisdiction. The court should grant the petition, hold the SEC's actions illegal, and remand. So here, the orders are, by regulations, just the informal views of staff. They don't really necessarily involve any opinion from the actual commissioners. Is that incorrect? That is correct. It's the views of the staff. Although the same was true in Clark, Your Honor. And that was a point that the CFTC made. Made it repeatedly in various forms. They said, these are just the views of the division. The no-action letter in Clark likewise has all these caveats. You can't rely on this. This could be changed at any moment. The commissioners could disagree. All those sorts of, like, all that sort of language is the exact same in both. And in Clark, were there specific regulations that said these, the letters do not constitute the official expression of the commission's views? Was there some similar regulation in Clark as well? I'm not sure whether the regulation said that, but the letter itself, I believe, does say that. Because here, 17 CFR 202.13 says specifically that, by rule, these staff statements do not constitute the official expression of the commission's views. Right. Is that distinguishable from Clark, or is there similar language in the regulations that were involved in the Clark decision? In Clark, the no-action letters similarly did not represent the commission's views. I'm not sure whether that was based on the regulations in the CFTC or was based on the no-action letter itself. I just remember in Clark, the Fifth Circuit, Judge Duncan's opinion addressed that particular issue. So we're not sure if there was a regulation in Clark that said the same? I'm not sure, Your Honor. I just know that Clark addressed that point and said it doesn't matter whether it was stated in the no-action letter, whether it was in the CFTC's regs. It didn't matter. It didn't deprive the decision of finality. Why isn't this moved? Well, so, Your Honors may have seen about 10 days ago, we filed a Rule 28J letter showing that Kroger, which is the same company that sought no-action relief that precipitated this case, has now sought the same relief against the same proposal, same proponent, same agency, same basis as they did last year. Well, what about the three-year rule? Well, so, we would argue that the three-year rule is actually not going to bar this proposal. We've got arguments that we're going to raise during the no-action process now at the SEC that that rule violates Section 14A, but I think kind of more practically speaking, there's no reason Kroger would have included this 14A I-7 argument, the social policy issue argument, if it turns out that there's just no way that the Commission, that the Division is actually going to reach it. Obviously, Kroger, they have sophisticated securities lawyers and they included that basis, so they surely don't think that the three-year rule is some slam-dunk preclusion. Even in our view, as we explained in our reply brief, even if Kroger itself hadn't sought no-action relief again this year, we still think the case is not moot. There's an ongoing controversy, just as there was in Clark, between petitioners and the Commission over this diversity proposal. Petitioners have filed it years and years in the past, going back five years now. They keep submitting it, going into the future. Now, of course, your client—I'm so sorry. Normally, the capable of repetition requires that it be your client that is proposing these shareholder votes. And how do you prove, other than saying, we have this proposal here and this identically worded proposal and there's no legitimate way to distinguish them, does that go far enough to prove that there is some kind of illegal discrimination going on? Well, so, a few responses. First, on the capable of repetition, yet evading review point, just to be clear, it is the same client, it's the same petitioner submitting the same proposal year after year. And what is the most important point, I think, on kind of the second part of your question, Judge, is that the SEC has said, in staff legal bulletin 14L, it's cited in our papers, that this significant social issue inquiry is not company specific. It's kind of the whole point. The point is, it raises an issue that rises above any particular company. And so, when you consider that, whether diversity under one circumstance is significant for social purposes for one company is going to be the exact same answer for another company. So, whether it's Kroger that saw a new action relief or some other company that does, and again, we don't have to show that some other company absolutely, positively will, although, as we said, Kroger actually has now, seek that same relief. We just need to show a reasonable likelihood that this issue will come up again. And given that petitioners have been submitting this for years and years, will keep submitting it for years and years at various companies, given that the SEC insists that the analysis is not company specific, it's really the exact same inquiry every single time, in our view. And that really confirms even kind of beyond Clark's consideration of mootness. This was a factor not present in Clark. This shows that the case is certainly not moot. Recall, mootness did come up, as I mentioned, in Clark. And the court said, as long as the parties continue to dispute, as long as they continue to spar over, was the language that Judge Duncan used, to spar over that proposal, there's at least some concrete interest. Here, again, the SEC hasn't said we were wrong. The SEC hasn't said it was wrong, to be clear. The SEC hasn't backtracked. It hasn't said, just to be clear, we will never grant new action relief on this again. Would it be possible, SEC says, we can't rule on the merits of this because it was an unreasoned decision and the most this court could do is vacate and remand. The SEC certainly made that argument, that if the court concludes there's jurisdiction, that that's all the court should do. We'll certainly take that win. We're not going to dispute that at all. We think that under the SEC's own regulations, they really had no discretion except to conclude that this is a significant social policy. So the court should just say it was arbitrary and capricious, not just for lack of a reasoned decision, but that the action itself is arbitrary and capricious because it's inconsistent. At the very least, it was a change in SEC position that was unexplained and completely unrecognized. What do you say about Professor Griffith's amicus brief that says the whole basis of 14AA in the last 30 or 40 years is unfounded? That's not an argument that we've raised before the court. Mr. Keller, who will follow me, has made that argument. I won't let him give a further explanation. Our clients are sympathetic with that view. I think our view probably is that Rule 14AA is not authorized by Section 14A of the Exchange Act. But for purposes of this case, our argument is a little different. It's that if we're going to have this process, it needs to be fair. You're dealing with the law as it is, not as it ought to be. I'm sorry? You're dealing with the law as it is, not as it might have been. Correct. So our view for purposes of this case is simply that if we're under this scheme, if we're going to have Rule 14AA, it needs to be done fairly, not arbitrarily, not inconsistently. Again, Clark, in our view, answers every question before this court. Have there been any cases in this circuit or any others where a no-action letter from the Commission was considered to be a final order from the Commission? I know you rely on Clark pretty heavily, which is a CFTC case, but just dealing specifically with this circuit or any other circuit, how does such a staff letter would be a final order? I don't believe so. The closest would have been Medical Committee, the 1970 D.C. Circuit decision, which did review a no-action letter, although in that case, the Commission had reviewed it in the interim. There haven't been that many cases on it, to be honest. Clark acknowledged this, that there had not been many decisions to address no-action letters. It acknowledged, to be frank, that most circuits have said no-action letters are not reviewable, but once Clark said that a no-action letter is not just reviewable, but is, in fact, a license, in our view, that resolved whether it's an order for the SEC, especially given the CFTC's own comment that the no-action letters there are, quote, virtually indistinguishable. On a lot of the basis for regulating under the CFTC, it's very similar to the SEC. That's true, and the . . . The disclosure and that sort of thing, fraud. And the Commission also set up very similarly, Your Honor. So in Clark, the CFTC case, the no-action letter there was likewise issued by a division, DMO, they call it. Here, the no-action letter is issued by a division, and so it's the same kind of decision being made by a division. It's the same purpose that parties seek it. That's one of the important points, in our view, in Clark especially, is that the whole reason that companies seek this relief is to get that green light, and that's what makes it a license, to get that assurance that the SEC will not seek to enjoin the proxy, essentially a form of safe harbor, and that's what gives it a legal consequence. In our view, there's other legal consequences here that weren't present even in Clark. For example, courts sometimes give deference to SEC no-action letters, and any form of deference, we argue, is a legal consequence. And with a few minutes I've got left, I'd like to say that even if Your Honors disagree that Clark just resolves the jurisdictional issues here, we still have the unique provision in the Exchange Act, Section 78D-1. This is the provision the Supreme Court addressed in Axon a term or two ago, where decisions made by kind of subordinate parts of the SEC will be deemed the final action of the Commission itself for purposes of judicial review. In fact, it says for all purposes, 78D-1, subsection C. And all that's required to invoke that is that the Commission have delegated the authority to make those decisions to that subordinate group. We list in our reply brief, there's at least three or four different places where the Commission has made clear that it has delegated no-action decision making to the Division. I think perhaps . . . How does that square with Judge Douglas' question about the regulation that says that no-action letters are not the views of the Commission? So I think what it means, Judge, is that even if one were to take the view that the Division letters here are somehow different than those in Clark, or that the statutory regime is somehow different on that aspect, that the Exchange Act has its own separate provision that allows those Division letters to become the Commission order. That's the whole purpose of 78D-1, so that those subordinate decisions can become reviewable just as if they were Commission orders. Now, again, in our view, the Court doesn't have to reach that. We think Clark, with the definition of order under the EPA, resolves it. But there are several places where the SEC has made clear that it has, in fact, delegated this decision making power to the Division. There's a 1976 order that we cite in our briefs. The SEC cites it as well, where the Commission says that the Division will be making these decisions, and only in the unusual case will the Commissioners address one of these. That sounds exactly like delegation to me. And plus, if it hasn't been delegated, it's unclear how the Division even has authority to issue these letters in the first place. So, 78D-1, in our view, provides an alternative basis to finding jurisdiction here. Okay. Perfect timing. Thank you. Thank you, Judge. Mr. Keller. May it please the Court. Scott Keller for the National Association of Manufacturers. The First Amendment and the SEC's statutory delegation do not allow Rule 14A-8, which compels a corporation to include a shareholder's speech on the corporation's own speech soliciting proxy votes. You're not saying they do not allow any kind of regulation? They just don't allow non-business related proxy ideas? They certainly don't allow that. But our position also is that the SEC has no authority to force a corporation to put a shareholder's speech on the corporation's own speech. Oh, I see. But it's Pacific Gas and Electric, right? Yeah. It's PG&E, but it's also, you know, various other cases. You know, and I would also cite to the DC Circuit's NAM-1 and NAM-2 decisions, which invalidated the SEC's conflict minerals rules under the First Amendment. And the recent flood of activist shareholder proposals confirms that the SEC is politicizing corporate America. In 2021, the SEC said that Rule 14A-8 compels shareholder proposals that raise issues with a broad societal impact, even if they have no nexus between a policy issue and the company. So the SEC is compelling corporations to subsidize and disseminate all sorts of controversial political positions, from climate change to abortion to diversity and gun control. And there's no sufficient governmental interest here. The separate Rule 14A-7 and state laws already address informational interest by allowing shareholders to send their own proxy vote solicitations at their own expense. And the separate Rule 14A-9 already prohibits misleading speech in proxy statements. So this is all about the SEC allowing a single shareholder that only needs $2,000 worth of shares to hijack the corporation's own speech. That violates the First Amendment. There's no statutory authority for that. How do we have authority to rule on that with you as an intervener? So first of all, we are asking in this case for the same relief that the SEC seeks, which is, Kroger shouldn't have had to put this onto their proxy statement. So we're asking for no relief beyond the respondent SEC. So under Virginia House of Delegates in Little Sister's case, we don't need to have independent standing. I would submit, though, that we do have standing, if the court were to get to that issue. Even right now in the 2024 proxy season, NCPPR has a shareholder proposal pending with an NAM member seeking a no-action letter. That's Intel. Other entities have shareholder proposals pending with NAM members seeking no-action letters. That's Exxon, General Motors, Southern Company, Bristol-Myers Squibb, just to name a few. Also, this is a First Amendment case. The overbreath doctrine could apply as well, and litigants are able to raise the speech interests of others. Especially here when we're talking about a compelled speech regime where every single time a company wants to go ask the SEC for a safe harbor from enforcement, they have to spend, in the SEC's estimation, $150,000 every single time. There are hundreds of shareholder proposals every proxy season, right in the middle of that season right now. And think about the timing as far as mootness and capable repetition yet evading review goes. This case was filed in, I believe, April 28th of 2023. Kroger's annual meeting, I think, was June 22nd, 2023. That's less than two months between the time the case was filed and the annual meeting. And the shareholder proposal, sorry, the corporation's proxy statement had to go out before that date. And so if the Supreme Court, in the Turner case, said 12 months isn't long enough to get full review, and Baladi said 18 months isn't long enough to get review, this is certainly well within the capable of repetition yet evading review exception for mootness. But if I could turn back to the First Amendment in particular, this is compelling speech alteration, dissemination, and subsidization. Every single time a corporation has to go to the SEC to say, we don't want to on our proxy statement, that is necessarily altering the contents of the corporation's own speech when the SEC says, no, we're not going to give you that no action letter. We are not going to give you that safe harbor from potential SEC enforcement. It's also subsidization. The Third Circuit in the Trinity case said, Rule 1488 compels the subsidization of speech, in particular, the corporation subsidizing the shareholder's speech. And Rule 1487 already provides that mechanism that shareholders can submit their own shareholder proxy solicitations to other shareholders. They just have to do so at their own expense. And so the SEC's amici can see this, that this is all about forcing corporations to subsidize speech, contentious political speech that they don't want to. Our brief at page 35 to 36 gives an example from the Kroger statement that we're dealing with today. Kroger had to put on its proxy statement speech that was allotting Planned Parenthood and the Southern Poverty Law Center. Now, whatever your position is about those organizations and the positions they take, this is definitely controversial political speech. And so we know from 303 Creative, when we're talking about speech of political significance, you can't compel one speaker to include that on another speaker's message. That also easily takes us out of any potential zauderer or commercial speech context or arguments. And NAM-2 from the D.C. Circuit also held that that case didn't involve the zauderer doctrines specifically because the SEC was compelling controversial speech on a corporation's proxy statement. And I think the best articulation of what the First Amendment means in this context, because as I take the SEC and their amici, they have no limiting principle for how the First Amendment constrains what they can do. And I think the NAM-2 decision, Judge Randolph's opinion from the D.C. Circuit probably put it best to say that if you were to read the body of precedent regarding the First Amendment and the SEC broadly and too broadly, that would allow Congress to easily regulate otherwise protected speech using the guise of securities laws. And then they could require disclosure of political ideology to their board members. I know this court has a case about, you know, the racial makeup of boards and the NASDAQ rule. In the words of NAM-2, it said that would obviously be repugnant to the First Amendment. And simply slapping the label securities laws on it or making a company do this on a securities filing with the SEC, it is obviously repugnant to the First Amendment. And here we're not even dealing with security statements. This is speech that's internal to the company. It is speech from a corporation to its shareholders. It has nothing to doing, this has nothing to do with preventing consumer deception in buying and selling securities. Instead, this is the SEC telling the corporation what it must do. And it's overriding state corporation law. I've been talking about the First Amendment, but I think we have a pretty good statutory authority argument as well. The SEC and Tamieki cite no example, and we've found none, of a state law that allows a shareholder to commandeer a corporation's proxy statement and put its own speech onto that. There are at least three different clear statement canons of construction that apply. The federalism canon, which says state corporation law is an area traditionally regulated by the state, so Congress has to provide a clear statement that wants to override that and give the SEC power to compel that. The second would be, obviously, constitutional avoidance. Our First Amendment argument would apply as a matter of constitutional avoidance. The SEC, or the Lowe versus SEC case from the U.S. Supreme Court makes clear that the SEC's statutory delegations are constrained by the First Amendment and the constitutional avoidance doctrine. We also have the major questions doctrine, although, quite frankly, I think the federalism canon gets you there. You wouldn't have to reach the major questions doctrine. All in our favor. And if I could finally turn to the commercial speech doctrine. This is not proposing a commercial transaction. This speech is not related solely to the economic interests of the speaker and its audience. Again, this is about internal speech to the corporation. And the SEC in 2021, again, said even if there's no nexus between the policy issue and the company, the SEC could still compel the corporation. Of course, in this particular case, you could say it's business related because they're asking for a report that pertains to how they treat their employees. And I would still submit that that would not be allowed under the First Amendment, whether we're talking about commercial speech or SAUDER. I mean, the NAM 2 Decision 2 said we're going to assume that intermediate scrutiny and not even strict scrutiny applies, and it still fails that. So also, Judge Jones, I would further submit that if the SEC can just come in and say like, well, as long as you word any proposal to say like, well, tell us about how this might affect your business, that would completely swallow the rule and allow for all sorts of compelled speech. And that gets us back to our NAM 1 and 2 point that that can't possibly be consistent with the First Amendment. We agree with the petitioners this case is not moot. We also agree with the petitioners that this is final agency action. And if I could direct your court to three specific citations of authority for the fact that this is final agency action, all deal with the SEC's own position. First, and crucially, 17 CFR 240.1488J-2 sub 2 says these no action letters are binding authorities on companies that they cite, that we have to cite to the SEC. Second, the SEC issued a final rule to reverse a no action letter. This is in our motion to dismiss opposition at page 12. That's not the actions of a commission that thinks that this is all non-binding. Instead, they went through. It speaks to final agency actions. I think that's the rub for me. It specifically says that a person agreed by a final order of the commission is able to obtain review by this court. That's correct. And this is final agency action. Not only is. You're still using the words final agency action when the statute speaks to a person being agreed by a final order of the commission. I'm sorry, Your Honor. It is a final agency order. Again, I agree with the petitioners that the APA divides the world into rules or orders. And when they're talking in actions, I think would be both. But we also do have an order here as a practical matter. I think the best case to say a final agency action in the final order from the commission are the same thing. In our reply brief, I forget the precise citation, Your Honor, but our reply brief at pages four to six in our motion to dismiss opposition from 10 to 15, we have cited cases where from other circuits they have treated an order or an action. Sorry, an order or a rule as both an action. The APA's definition of what constitutes an order is very broad. It is essentially whenever an agency is in fact taking action. And I don't. The SEC can take the position that it wants here. But when it is formally issuing a letter, which functions as a safe harbor. Like Bennett v. Speer. I'm sorry, Judge Jones. Like Bennett v. Speer. Potentially like Bennett v. Speer. Texas v. EEOC, I think, is also a great case for us. Because there, that was a purportedly binding, sorry, a purported guidance document that the agency said wasn't binding. And this court said, no. It's providing a safe harbor. There are legal consequences that flow from it. And the final point I would make at our motion to dismiss opposition to page 11 is the SEC has repeatedly told courts that these no action letters provide fair notice on what these laws mean. So for those three reasons, this is final agency action. Thank you. Okay. Thank you very much.  Mr. Wyman. Wyman. Wyman. May it please the court. Theodore Wyman for the Securities and Exchange Commission. None of the claims raised by petitioners or NAM are properly before this court. The reasons are interrelated but support three independent grounds on which the petition should be dismissed. First, the petition is moot. Because petitioners claimed injuries did not come to pass. As NCPPR's proposal was included in Kroger's 2023 proxy statement and voted on by the individual petitioners and other Kroger shareholders. The second reason is that the staff letter that petitioners challenged is not a commission order, final or otherwise. So there was no subject matter jurisdiction. For direct Court of Appeals review under Section 25A of the Exchange Act. And third, this petition is not a proper vehicle for the challenges that petitioners and NAM raise to staff processes and the broader statutory and regulatory scheme. With respect to mootness, the Supreme Court's decision in medical committee makes clear that the petition here is moot and should be dismissed. The court held there that the challenge in that case was mooted with no reasonable expectation of recurrence. When the shareholder proposal was included in the company's proxy and failed to obtain enough votes to avoid Rule 14a8's separate exclusion for resubmitted proposals, the three-year exclusion. The very same thing occurred here. And indeed, Kroger- Well, let me ask you a question. They did say that they're planning to or have filed exactly the same proposal for some other companies. And shouldn't we assume that the SEC will rule the same way and refuse no action, grant no action letters for those other proposals? Well, I think before you even get to predicting what staff may do- It's not a prediction. It's just asking for consistency by the agency. Well, the agency, you know, is not making the decisions here. This would be staff expressing its view. All right. And staff can change its view. In the 1976 release, the commission explained several times staff has changed its view. The process is intended to take account of changing circumstances in society and sort of assess- Are there circumstances where this proposal would be okay? And what are those? Speculate for me. Well, that hasn't been- So the agency has total unfettered discretion to determine what proposals are, quote, speech that is significant enough to go before corporate boards. No, it's the courts that decide. Courts are the only- You don't want us to decide. You're saying this case isn't even before us. That would be in a district court action. The mechanism that this is primarily enforced in almost all circumstances is a private action. NCPPR has the right to sue Kroger. And in fact, right now they could. They don't have to wait for staff to issue a letter about their 2024 proposal. They have 80 days, plenty of time as the Second Circuit has held to- for district courts to assess that question and give full review. Doesn't mean that there's not this alternative. I'm sorry. The availability of that lawsuit does not mean this is not an alternative. Sure, but it goes to the question as particularly here of the likelihood whether it's capable of review. There's certainly plenty of time and there's a process available. They've chosen this means, but that was their choice. They could have chosen immediately when Kroger expressed a view to exclude. They could have gone to district court like other companies, other proponents have done and companies sometimes do. Would the SEC have intervened in such a suit? I don't know. I mean, I think a lot of these district court cases, the SEC has not intervened. I know that. That's my point. Would the SEC be bound by the outcome of such a suit? Well, I think . . . Not a party. A court's interpretation of the rules, I mean, has the effect of a court judgment and there certainly would be an appellate process there. Sure, I mean, if there were an interpretation of Rule 1488 that a court decides on in a proceeding, that would of course be given the weight of any court decision. That would be binding on those parties for that case only is what I'm suggesting. Well, I mean, there are certainly circumstances in which a court holding expresses a view that would impact other cases. But stepping back for a moment, you know, the situation in medical committee is almost exactly the situation here. Now, Your Honor had asked about the fact that they plan to submit to many other companies, but the Supreme Court and medical committee applied a pragmatic analysis that looked at what actually occurred in the case at hand. When the proposal failed to achieve sufficient shareholder vote to avoid the resubmission exception, not only the court held did that make it unlikely to recur for the next three years, but it didn't meet the burden of reasonable expectation of recurrence more broadly because the proponent had already expressed a willingness to litigate and the shareholders simply did not support the proposal. So what the Supreme Court said is, look, you have to reach a high bar to show that this is reasonably likely to occur. And it's just simply not met where a proposal simply fails to launch in the shareholder voting. Now, NCPPR has also argued that, you know, it has challenges it may raise to I-12, that's the resubmission exception. But the fact is it's their burden to show that this is reasonably likely to occur, not that they may have some way of avoiding its recurrence here. I mean, medical committee is very clear on this point. More broadly, even if this dispute, like I said, were to recur, it would be capable of Now, I think there are a lot of challenges that are raised by the petitioners and NAM. Most of them are systemic and are not time-bound to any proxy season. And if a company were to announce an intent to exclude a proposal, again, NCPPR can sue them directly in district court where ample time exists for review. But even apart from mootness, the remedy for petitioners' claimed injury was never a petition for review of the informal views of SEC staff for which there is no subject matter jurisdiction in this court, as three circuits have held. Under Section 25A, direct court of appeals review is available only for final commission orders. The commission has issued no order or even expressed views concerning this matter. And the Kroger letter is not such an order. Your friends on the other side said that issue hasn't been litigated often. And you just, you just, I think you just mentioned that there are other circuits that have, have looked at this. And how did those? Three circuits have said that, you know, a lot of these reasons overlap, right, finality, whether there's an order. But three circuits, the D.C. Circuit, the Seventh Circuit, and the Second Circuit have said that specifically SEC no action letters from staff in the, in this context, proxy context, are not reviewable commission orders. And the reason for that's clear. NCPPR relies on effectively two things, Section 4A, which 78D1, there's two ways of referring to these statutes, and the Clark decision. Starting with Section 4A, while that underpins their entire argument, it actually cuts strongly against them, because it shows what the commission does when it does delegate authority. Section 4A says, by published rule or order, it may formally delegate these, any sort of functions of the commission. And that's the, when you see that there's something that's delegated, and then there's a right of review to the commission, and the commission can, can, can take that up or not. And that would establish finality if the commission doesn't. But there's no delegation by published rule or order here. So let us say, for instance, that SEC staff gave a no action letter to, started giving no action letters to parties who decided to say that they were in favor of, what is it, divestment of any stocks that are owned in, in companies located in Israel. And then it gave no action letters. It, let's see, gave them, it refused to give them no action letters, and then it gave no action letters to the proxy questions, should the company engage in activity to support what? Now, you, people of Gaza. Got it. Israel, Gaza. Got it. No, no, no, no action, no action. Now, according to SEC's current policy, that kind of action is A, permissible, and B, not reviewable. Is that right? The no action, in the hypothetical where the staff issues no action orders. Well, there's two ways to answer that question. There's the specific challenge at hand, and there's sort of the systematic question, the systemic question. In the question, in the matter at hand, staff is simply providing views. And again, I don't know that this has come up or what staff's views would be. Only a matter of time. But in such a circumstance where there was a disagreeable view expressed by staff, either the proponent or the company can simply go to district court and have a court decide what the reality is. Because courts decide what's permissible under the rule. And that's, I mean, the commission has said this for decades. I mean, this is an 80-year-old scheme, and this has always been the system. The point is, but the point is, you have, clearly, you have proposals that are clearly far outside the compass of what a corporation is supposed to do. Far outside the scope of regulating the transparency of the business operations. And you have the SEC taking diametrically opposed positions on what amounts to social Sure, and that gets to my other point, which is, look, it's fine to have issues with the agency acts. There's a process for challenging that. The process would be But you're saying there is no process to sue the SEC directly. Because if you just sue the company, or one company sues the SEC, well, if they had time and the resources and so on, they might do that. But most of them are cowed because of all the other regulatory impositions that the SEC can inflict on them. Right. So Well, so there's essentially two means of sort of raising these issues. One would be through rulemaking. This is Well, we, I've been down that path with the SEC on the rule that in a consent decree, the person who accepts a consent decree can never say anything negative against the SEC ever. And I'm aware that a proposal has been pending before the SEC, literally for years to say they can't inflict that kind of prior restraint. So Yeah, well, I'll talk about Well, I'm aware of those those issues being raised. The point I think the point is that it came to your attention in that courts can consider when if the SEC doesn't act on a rulemaking petition, there are avenues for court relief there too. But just stepping back for a second, this statute, this rule has been amended frequently. I mean, most recently in 2020 to this proposal in 2020. And for decades, the commission has actually asked, please comment on staff's process, comment on the involvement of staff and giving no action relief in 1983, 1998 to 2020. But you're saying no action letters aren't reviewable in court. And therefore, it doesn't matter who comments about what? But they exist because it's a useful process. I mean, this has been put to the public for I mean, this is an 80 year old scheme. If you go back from the beginning, I mean, yes, we're all familiar with, you know, rulemaking and adjudication. But agencies, the SEC, at least from its inception has also essentially opened its doors to provide advice to people who want to understand sort of informally how this how this rules work. This is literally goes back to the beginning as we as we've cited in our brief. And over the years, this is developed into this sort of process where SEC staff is available. I mean, these are people who work on these issues every day. And people don't have to companies don't have to seek no action relief. They typically do. Excuse me, no action views of the staff because, you know, they typically do because it's something that's found to be useful. And this has been put to public comment multiple times. And it could be again, if it was the view that staff shouldn't be sort of providing formal views that can be challenged. Could be but it's totally within the agency discretion whether to do that or not, correct? Well, the SEC would make an interpretation or make rulemaking based on that. And then that would then be reviewable in court. So only if they chose to act. I mean, that's sort of the problem we're involved in here where I want to hear your argument why Clark doesn't apply. I'm sure we all. Yes, absolutely, Your Honor. Well, I think Clark strongly supports the commission here by the contrast that it provides. Let's talk about three notable distinctions in Clark that are not present here. I mean, look at the letters. This was and I want to also emphasize that this was Clark was a preliminary decision. The concurrence expressed how this was, you know, it was it was a closed case to preserve the status quo at the preliminary injunction stage. They were this was the ruling they reached. But here it's a far cry from that close line. There were two letters essentially that illustrated the impact of the letters that the CFTC gave in that case. The first said it would, quote, allow the recipient of the letter to operate in a market. This played out. And the second revocation letter ordered the recipient to close all contracts and exit the market within six months. And this court held that those factors, plus the rule itself, which said a beneficiary can rely on the letter when it receives one, full stop. Those factors are not present here. Now, NCPPR, I think, misleadingly quotes one of the SEC rules that says that the public can, quote, rely on a letter, informal views of staff as representing the views of the not representative of the commission. Our regulation goes to the source. Simply you can view that as, you know, rely on it as the views of this particular source, which are informal. There, both the rule, which just said full stop, you can rely on the letter, and the fact that the letters showed that this is how they worked. It allowed them to enter market, and then it ordered them to leave the market. And so I think in Clark, you were presented with sort of some statements that were disclaimed in effect, but there were letters that showed that the exact opposite was occurring, a court found in practice. Here, there's nothing like that. No party has been ordered to include anything on proxy materials or to exclude. The staff simply provides its informal advice. And there has to be a sort of a mechanism by which informal views can be expressed. I mean, people call on the telephone. I mean, this has been something that, again, for 80 years, there's been sort of interaction between the public and staff at a very informal level. And that's a positive thing. It doesn't turn it into a order of the commission that is given the sort of full administrative. I mean, from one perspective about representative government, the whole idea that companies have to coddle the staff of a regulatory agency in order to take their temperature and find out what they ought to do is totally inconsistent with the rule of law. Well, they don't have to. Companies don't have to. I understand that. But I mean, that implies that the rules are so vague and loosey-goosey that nobody knows whether they'll be at risk by not asking for a no-action letter or whatever. Well, you know, I think that goes back to the sort of the procedural posture of this case, which is that this is an appeal. This isn't a challenge to the statute that's brought, you know, through rulemaking or even, you know, their viewpoint discrimination claim. This isn't coming up from a district court action accusing the agency of acting, you know, unconstitutionally. This is a petition to review the informal views of staff. It's been mooted by the company, including the proposal. And it's not an outstanding proposal. And it is something that three circuit courts have said, there is no jurisdiction to review these letters directly. And so what petitioners and AM are asking this court to do is sort of to take that launching point, which is already deeply problematic and unprecedented if it were, if this court were to hold that this is, you know, a reviewable order of the commission. And then they're trying to tack on these additional challenges to the statute, to the rule itself. And there are ways to raise those challenges and bring them to this court's attention. But this is not the vehicle to do so. Well, let me just, I mean, my main point I would make about Clark is you can parse it as relying on different facts, which it does. But Judge Duncan's description of final agency action talks solely about the APA and the breadth of what is considered final agency actions under the APA and the broad sweep of the term, which includes agency rule order, license, sanction, relief, and so on and so forth. So I think Clark has to be read more broadly than confined to the arbitrary granting and withdrawal of some permission. I understand that, Your Honor. I think I would say that the distinction there is that the court found that staff was sort of in a much more consequential role that be based on the factors that I pointed out than the staff in the commission context has as three circuit courts have held. Again, in Clark, I mean, if you read those letters, as the court did, it said, look, a recipient of those letters would say, this allows me to enter the market. This orders me to close all positions within six months. And the statute said I could, the rule said I could rely on it, full stop, not rely on it as representing informal views. I think more or less relied on the legal consequences that flowed from those letters. What would be the legal consequences of the staff letters in this case? That there is no legal consequence. And I think that's the key here. There's absolutely no obligation of any party or the commission or staff to adhere to any  This is simply providing the informal views of staff. If I think opposing counsel said that courts give deference to these, they don't. I mean, the case that's cited, I think by NCPPR, the second circuit case said that this is not, these are not given deference. They're certainly considered as persuasive, essentially, where it's, look, this is the views of staff, we'll consider it, but they're not given deference. And I think this is also, it's also worth pointing out that, you know, there's a couple hundred of these proposals every year that companies talk about. And staff doesn't have, you know, the commission certainly doesn't have the resources to be bringing enforcement actions in most of the cases. Private litigation is the primary means by which these sort of questions are hashed out, not by the letters. Proponents of companies, they don't need to wait for a letter. In fact, they talk about, NCPPR talks about Kroger stating its intent to not include their proposal for 2024, primarily because of the I-12 exception, but also because it continues to adhere to its view that the ordinary business matters exception still applies. They can sue. They could have sued 10 days ago. They can sue Kroger now. They don't have to wait for a commission, a staff expression of views. That suit would have no impact on the commission if it was not a party. Well, I think it would certainly have, I would say, first of all, it would certainly have an impact on the relief that the party are seeking in their injury. I mean, their purported injury, let's start, go back to the beginning. They sought emergency relief from this court saying, we will be injured if our proposal is not included on the 2023 proxy materials for Kroger. And presumably, that's their same injury that they would assert in 2024. But they can affect that, and they could resolve that injury quite easily, if there's merit to their position, by suing Kroger and compelling them to include the proposal. Plaintiff is the master of his case. Sure. But I don't think there's any principle that would say that a plaintiff can avoid the notion that something is capable of review by choosing the, you know, sort of most complicated way of bringing something. That's the question, whether this is capable of review. Not whether their particular means is the best way of review. That's a very interesting argument. But what's your best case for that? The capable of repetition is an exhaustion rule. Well, it's not that it's an exhaustion rule. It's that the question is whether it's capable of being, you know, reviewed. If this were to come happen again. Beef isn't with Kroger. Their beef is with the SEC that gave, that, I keep getting it backwards, that gave the no action letter. Well, they're saying that they are taking issue with the SEC practices. That can be challenged without regard to any particular proxy season. If they have an issue with, you know, they talk about 14L, and they talk about staff practices, there's ways of raising that. Like I said, through rulemaking. You're not challenging Article 3 or such standing. I'm sorry? You're not challenging standing. Right. But the question is whether they can, they have a means of getting review for the question. The original question here, the core question is, does the I-7 exception apply to their proposal? That question can be reviewed in a district court action. They could bring that question to a court's attention and get a ruling and get the company to include it. The question is, is staff applying practices that they think are appropriate? Or should the commission have a different process? Or should the commission give an interpretation that staff should do something different? There's means of raising that as well. And those are not time-bound at all to any proxy season, because those are systemic. There's no reason why they would have to do that within 80 days of, you know, before the proxy. They could do that and, you know, through rulemaking, a petition for rulemaking, seeking court review, if that's not acted on. Or, you know, in a case where they talk about viewpoint discrimination, which we strongly disagree that there's viewpoint discrimination by SEC staff. But if they were to have a legitimate claim, there's means in court of challenging an agency that's not complying with proper practices. Well, let's move on to the merits for just a few minutes. How can you say this is not viewpoint discrimination? Well, I don't think you can disentangle them. There's no record on which this can really be assessed. I mean, it goes to the core question. Well, that's a real interesting thought, too, because the whole premise behind agency decision-making is there has to be reasons, right? Well, sure. And if this court were to reach that issue, nobody disputes that you wouldn't reach those questions at all. I mean, if you get away from mootness, if you decide that this case is not moot, and if you decide that this is a reviewable commission order, we're all in agreement that this doesn't comply with the APA requirements for a commission order, because it was never thought to be. Three circuit courts have said it's not. So it's hardly, you know, it's not surprising that it doesn't comply with the full panoply. Play this along, please, because, all right, suppose we say it's justiciable, and we say it's not. What's SEC going to do then? Well, you know, so if this court were to vacate and remand and say that this is a — I think the commission would have to grapple first with the notion that this is basically this is a commission — a process for issuing a commission order. And I don't know how — I mean, I can't speak — obviously, this is a five-member commission that votes on the way it acts, but it would certainly have to grapple first with the notion that this process has such legal weight. And if it's possible, that would alone provide relief in that circumstance to NCPPR, and there would be no letter that they say would be harming them. And I can't say if the process would result in another letter. I guess that's something that we would have to see in that context. But that would give them full relief. Again, they're saying the existence of this letter harms us. And we obviously disagree that this is something that's reviewable and justiciable. But if this court were to say, look, these are orders, then, yeah, vacate. And then they would have the relief that they sought from this court, which would be — there would be no more staff letter expressing this viewpoint. And then SEC would — then the commission would say, great idea. We'll never give reasons again. Well, I don't think that they're — I think the issue is not just the lack of reasons. It's that they're saying that they don't want these letters to exist to express the position in the first place. If this court were to say that staff couldn't issue these letters, you know, and give its views to the public informally, that's actually more formal than we thought, and it's a commission order. And if it does so, certainly it has to provide reasons. Then, you know, I don't think that that would lead to sort of a damaging position where we would continue — that there would be these letters without reasons. I don't think that would follow. Does the commission have a view on the amicus brief of Professor Griffith? On the substance of NAM's arguments about Section 14? Well, I think that that's a really insightful question because it goes to the fact that the commission hasn't weighed in at all on these broader challenges. This is something that would be provided through the process of rulemaking, if there were a petition for rulemaking, if they commented in an existing rulemaking, then the commission could talk about its views on the statute and on Section 14a. These are First Amendment challenges, and the commission is not particularly competent to decide First Amendment issues, right? Well, but in every First Amendment challenge that I've seen, certainly a lot of the recent ones, I mean, the views of the agency as to what the government interest is, on how the statute works, these are all relevant things. Even when it goes to interpreting Section 14a to begin with. And let's remember, this is an 80-year scheme of— Well, the point about that particular amicus brief is that the fellow says that up until the mid-'70s, the commission never injected itself with proxy regulation that had anything to do outside of the direct business of the company. And then beginning in the 70s and 80s, which was sort of the high mark of permissive agency regulation from the court standpoint, the SEC went more and more into a viewpoint-based regulation. Well, and I think that shows how far we are, if we're talking about this, from the actual letter that's under review here. This is not a properly raised challenge to the statutory scheme or the rule as a whole. And certainly those issues could be raised in rulemaking. The commission could comment on it. And then this court would have the views of the agency involved to assess in determining exactly the course of how these things progressed over the years. But that's simply not presented here. So I just want to emphasize that, you know, certainly there's weighty issues being raised. But this is simply not the vehicle to address them. There's means by which any sort of problem with the exclusion of a proposal can be addressed. The scheme as a whole, staff's involvement, whether staff provides these informal views in the first place, all that stuff can be addressed through the rulemaking process. There's remedies in court, in private actions, or in a suit. And this is simply not the right vehicle to raise any of those issues. OK. Thank you very much. Thank you. Mr. McConnell? Thank you, Judge. Judge Douglas, during my introduction, you asked whether there was a CFTC regulation similar to the SEC one, saying these don't represent the commission's views. There is, in fact, such a regulation. It's cited in Clark footnote 6, 17 CFR 140.99A2. So that's not a way to distinguish the cases in our view. On this issue of the fact that Clark addressed final agency action, whereas here we need an order. Your reference on the other side says that under 78D1, which you cited in your earlier argument, that the only way for one of these, for there to be such a delegation is by a public rule or something of that nature. What is your response to that? That's right. The delegation has to occur by rule or order of the SEC. And in our reply brief, page 21 to 22, we cite at least three or four different rules or orders of the commission, not the division, but of the commissioners themselves, dating back to 1976, where they make clear that staff will handle these, no action requests. The commissioners themselves will get involved only in unusual circumstances. I think the SEC agrees that if there's been such a delegation, that 78D1 is triggered and this court would have jurisdiction. So that's one independent basis for saying that there's a commission order here. The second is Clark. And you're right, Judge Douglas, that agency action under the APA is not always an order. But sometimes, depending on the type of action, it is. The APA defines an order as including a license. So when Clark says this is a license, it's also therefore agency action, but also the APA says that means it's an order. So that's why in our view, even though Clark dealt with agency action, because it found it to be a very particular kind of action, that makes it an order, which is what we need under the Exchange Act. So it's a second independent basis for finding that order. So in our view, those are the two completely separate ways for this court to have jurisdiction there. And so your friend on the other side also responded to my earlier question about whether or not there was any other court, well, this or any other court, that ruled that a final order was reviewable by this court from the SEC specifically. And I think what I heard from your side earlier was that it hasn't been litigated very much, yet your friend on the other side cited to three other circuit cases that dealt squarely with that issue. Well, so just to be, sorry, to be clear, my answer earlier was whether any other court had found there to be a reviewable order. And that was— The answer to that is no? Is essentially yes. The answer to that is no? They say no. We would say yes under the 1970 D.C. Circuit Medical Committee. Would that be a break from the other circuits, from the 2nd, the 7th, and the D.C. Circuit? It would. But then again, Clark itself said, we're not following those circuits. And the CFTC cited the exact same cases in its briefing. They made the exact same arguments, and Clark rejected them. So I understand other courts have said to the contrary. We admit that. But this court has, in our view, adopted the position that these no-action letters are licenses and therefore, in our view, orders. My friend keeps citing the fact that we should supposedly just go sue Kroger. There's a couple problems with that. First, as Judge Jones says, the SEC is not a party, so they're not bound by it. I would respectfully direct your honors to Staff Legal Bulletin 14-H, as in Hotel, which is in our reply brief. That's where the staff say there's a recent 3rd Circuit decision, the Trinity-Wall Street case that's cited in the briefs. And the majority opinion in that case says the test for significant social policy is X, Y, Z. The division says, we don't agree with that and we're not going to follow it. The concurrence, we think, had the better view. If you want evidence that the SEC won't follow a court decision where they're not a party, you just need to look to that. Because they've said in the past they won't do it. At worst, in our view, there are just multiple avenues. Perhaps we could sue Kroger. We certainly can sue them under the Exchange Act. We would point out that there is, in fact, no express statutory cause of action under Rule 14A8. The Supreme Court has never recognized one. The closest the Supreme Court came was in the Borak case, which recognized an implied cause of action under 14A9. And long story short on Borak is that the Supreme Court has said they're giving it essentially the Bivens treatment. It's not overruled, but they're sure not going to expand it. And so it's not very clear in our view that there actually is a cause of action against Kroger. It would have to be implied under the statutes. So that's another problem there. Again, at worst, in our view, there are multiple avenues. My friend on the other side talks about Clark, and he says that the CFTC there had ordered, predicted to be closed. But if you look at the CFTC's briefing and you listen to the argument in that case, the CFTC certainly took the position that they did not order that market to be closed. They said, this is something you should do. That's what the letter says. And so we don't see a difference there. My friend says that there's no record in this case. It's all informal. There are 200 pages of briefing below. If I may, just one final point. He says it would be unprecedented to grant review in this case. Our view is that it would violate precedent to deny review. It would violate Clark in our view. And for all those reasons, the court should grant the petition and remand. Thank you. All right. Thank you very much.